UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:17-CR-00066S |
| JEBEDIAH DISHMAN, | § § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, Sherri L. Zack, Assistant United States Attorney, and James E. Burke IV and William M. Grady, Trial Attorneys, Child Exploitation and Obscenity Section, and the defendant, Jebediah Dishman ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to each of the following:

(a) To plead guilty to a criminal information, a copy of which is attached, charging a violation of 18 U.S.C. § 2260(b) ("Production of Sexually Explicit Depictions of a Minor for Importation into the United States").

(b) To the entry of a Restitution Order for the full amount of the victim's losses as determined by the court for victims of the conduct described in the charging instrument, below factual basis, and/or any relevant conduct, pay full restitution of the victims' losses, pursuant to 18 U.S.C. § 3663.

(c) To surrender his U.S. passport to the U.S. Probation Office for the Southern District of Texas on or before the date of entry of a plea of guilty pursuant to this agreement, to be held through his incarceration until the end of any period of supervised release imposed by the Court. Defendant further agrees to not apply for, or otherwise attempt to obtain, a passport from the United States or any other country from the date of this plea agreement until the end of any period of supervised release imposed by the Court. Defendant acknowledges that under 22 U.S.C. § 212b, his passport will be marked with a unique identifier indicating he is a covered sex offender or permanently revoked without such an identifier of a covered sex offender. Defendant also acknowledges that he must report international travel 21 days in advance in accordance with 34 U.S.C. § 20914(a)(7) and the Attorney General's Supplemental Guidelines for Sex Offender Registration and Notification.

(d) That by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2. The statutory maximum penalty for a violation of Title 18, United States Code, Section 2260(b) is imprisonment for not less than 5 years and not more than 20 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 5 years up to Life. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(k). ~~Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served~~

2

~~on the term of supervised release prior to such violation. See Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3).~~ SLZ Olt. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Notification of the Sex Offender Registration and Notification Act

3. Defendant has been advised, and understands, that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: where he resides; where he is an employee; and where he is a student. The Defendant understands that the requirements for registration include providing his name, his residence address and the names and addresses of any places where he is or will be an employee or a student, among other information. The Defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three (3) business days after any change of residence, employment, or student status. Defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for failure to register under federal law, Title, United States Code, Section 2250, which is punishable by a fine or imprisonment, or both.

### Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, including any order of restitution or fines, except that Defendant (1) does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255; and (2) does not waive the right to challenge the court's subject-matter jurisdiction. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing

4

Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he/she receive a two (2) level downward adjustment pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines.

(b) If the defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the defendant's offense level is 16 or greater.

(c) In exchange for the defendant's plea to the attached criminal information charging 18 U.S.C. § 2260(b), the United States will dismiss the pending indictment in case number 4:17-CR-00066 and will not prosecute him for other uncharged conduct presently known to the government and described in the factual basis below. The defendant acknowledges that the counts the United States agrees to dismiss were brought in good faith and not for any vexatious or frivolous reason on the part of the United States.

**Cooperation**
5

9.     The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant=s cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraph 24 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

10.     Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to sex trafficking of minors. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

6

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw her plea.

## Agreement Binding - Southern District of Texas Only

11. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Original Indictment or for other uncharged conduct presently known to the government and described in the factual basis below. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of

8

the Sentencing Guidelines do not bind the Court until the Court accepts the plea agreement. If the Court accepts the plea agreement, Defendant will remain bound to fulfill all of the obligations under this plea agreement. If the Court rejects the plea agreement, Defendant will be given an opportunity to withdraw his plea of guilty.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in the information to which he is pleading guilty. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Jebediah Dishman, a.k.a. Larry Kent Dishman, ("Dishman") is a United States citizen as indicated on his U.S. passport. Dishman was born "Larry Kent Dishman" in the state of Kansas in 1946.

On or about September 17, 2014, Dishman's travel in foreign commerce began with an airline flight from Los Angeles, California, to Taipei, Taiwan. Dishman continued to travel on an approximately six-month trip to several countries in Southeast Asia, including the Republic of Indonesia. He was scheduled to return to the United States of approximately March 18, 2015.

On June 21, 2015, the Federal Bureau of Investigation ("FBI") received information from a law-enforcement representative of the U.S. Department of State ("State Department Special Agent") that a U.S. citizen named Jebediah Dishman was reportedly photographing and molesting minors in Indonesia, as observed by a foreign citizen, W1, who was vacationing there.

W1 reported to U.S. authorities in Indonesia that in February 2015, she and her companion were vacationing in Indonesia, and met Dishman at the resort where both Dishman, W1, and her companion were staying. (This small resort is comprised of four or five cottages and the guests frequently gather in the common area for meals and activities.) In W1's conversations with Dishman, on or about February 20, 2015, she learned that he had been born in Kansas but he had lived elsewhere in the United States before moving to Panama, where he resided for the past fourteen years.

W1 reported to the State Department Special Agent that on February 22, 2015, she saw Dishman at the resort restaurant with "Minor Victim 1," a three-year-old daughter of German nationals also staying at the resort. W1 observed Dishman touching the victim, giving her candy, and taking photos of her with his tablet computer. The mother of Minor Victim 1 later reported to the Police President of Berlin, Germany, that Minor Victim 1 later disclosed to her that Dishman had touched her vagina and masturbated in front of her.

W1 also reported that on or about February 23, 2015, she and her companion were walking along the beach when they saw Dishman on his veranda, waving money and motioning for three young local boys to come into his hut. When Dishman saw W1 and her companion, however, Dishman shooed the boys away. W1 continued to observe Dishman after they arrived at their hut, and she saw Dishman masturbating while watching the children. W1 also saw Dishman sneak off into the forest, grab one of the boys, and attempt to take him to his hut.

Shortly thereafter, that same day, W1 confronted Dishman about his actions. W1 took Dishman's tablet computer and told him that she was going to give it to the police. W1 called Dishman a "dirty pedophile" and slapped him. W1 later provided Dishman's tablet to the local police and the tablet was eventually forwarded to the FBI.

U.S. authorities obtained a search warrant for the tablet in October 2015, and forensic examiners identified numerous sexually explicit images of minors, including that of the aforementioned German child, as well as internet searches indicating an interest in sex trafficking activity with minors in parts of Southeast Asia.

As part of this investigation, U.S. authorities, in October 2016, interviewed W1 and her companion, as well as several identified minors whose images were located on Dishman's tablet.

11

U.S. authorities also interviewed the resort owners, who corroborated Dishman's presence at the resort at the same time as the victim, her family and W1 and her companion.

In addition, an FBI Child Forensic Interviewer interviewed two of the resort owner's children, "Minor Victim 2," a four-year-old boy, and "Minor Victim 3," a fifteen-year-old boy, who told the interviewer that Dishman exposed his penis to them on more than one occasion while he stayed at the resort.

On November 8, 2016, Dishman was detained for secondary screening at Houston Intercontinental Airport, when he entered the United States from Panama. Agents with the Department of Homeland Security, Customs and Border Patrol, and Homeland Security Investigations located a "Nexus" Tablet on his person, which they examined pursuant to their authority to conduct border searches. Agents recovered a video and series of photographs taken on November 6, 2016, two days prior to his travel to the United States.

The video depicts Dishman sitting on a chair speaking to a young female who is operating the camera. Dishman's legs are spread and he is only wearing shorts. His penis is visible and he strokes his penis with his fingers as he speaks to the young female. He states, in Spanish: "I--I want you to make a video and . . . a girl to touch right here . . . in the video," while he gestures to his inner-thigh. He and the person (later identified as a ten-year-old minor female) negotiate a price off camera; she offers $2, and he counters with $1. The minor female off camera then tells another person (later identified as another minor female) to go stand in front of him and the video ends.

Panamanian authorities identified a ten-year-old minor girl who disclosed that, between February 2016 and November 2016, Dishman, who then lived near her home, called her over to his house on multiple occasions. She described Dishman undressing her, touching her body and

taking photographs with his cellular telephone. She stated that Dishman occasionally purchased clothing and food for her family.

As part of this investigation, U.S. authorities traveled to Panama in May 2017 and interviewed this minor girl, along with several other minors in a small Panamanian village. The ten-year-old girl stated that on one occasion, she said hello to Dishman in his house and he took his pants off, grabbed her by the arm, had her lie down the bed and licked her vagina. She stated that he licked her vagina more than one time. Dishman instructed her not to tell anyone, but she confided in her fourteen-year-old sister. U.S. authorities also interviewed her fourteen-year-old sister and allowed her to listen to the audio portion of the video extracted from the Nexus Tablet seized at Houston Intercontinental airport. She identified her ten-year-old younger sister as the camera operator. She also identified the voices of her seven-year-old younger sister and eleven-year-old female cousin in the recording.

Further, as part of this investigation, U.S. authorities traveled to Berlin, Germany in June 2017 and participated in interviews of Minor Victim 1 and her parents. Minor Victim 1, now five years old, stated that she remembered the incident involving Dishman in Indonesia. She described Dishman exposing his penis to her and touching her vaginal area. Minor Victim 1's parents both confirmed that Dishman offered the child candies the morning they were packing to leave and were otherwise distracted by the logistics of checking out of the resort. Her parents further confirmed that Minor Victim 1 was uncharacteristically distressed after they left the resort for several days.

Dishman agreed to be interviewed by FBI agents in November 2016. He confirmed his travel to Indonesia, in February 2015. He admitted he took sexually explicit pictures of the three-

13

year-old German girl using his tablet and that he captured the child's genitals in the images. Dishman was arrested in Houston, in the Southern District of Texas, on November 8, 2016.

### Breach of Plea Agreement

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United

14

States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

21. Pursuant to 18 U.S.C. § 3663, Defendant agrees to pay full restitution comprising all proven losses caused by the offense of conviction and relevant conduct to the victim(s) regardless of the count(s) of conviction, including identifiable victims not charged in the pending indictment and information, but known to the United States before the sentencing hearing. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss in an amount to be determined either before sentencing or within 90 days of the sentencing hearing. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge in any manner, including

by direct appeal or in a collateral proceeding, the restitution order imposed by the Court. A restitution amount in excess of what Defendant believes is appropriate will not be a basis for his withdrawal from this agreement.

### Forfeiture

22. Pursuant to 18 U.S.C. § 2428, Defendant stipulates and agrees that the following property is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture: **One Black ASUS "Nexus" Tablet, Serial No. K008090KBC293639 and a Google Nexus 7 II Android Tablet, Android ID aa4261d22b278fa7.**

23. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25. Subject to the provisions of paragraph 6 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

26. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay

payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

27. This written plea agreement, constituting 20 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on April 06, 2018.

_____
Jebediah Dishman
Defendant

Subscribed and sworn to before me on April 06, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: M. Flores
Deputy United States District Clerk

17

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____   _____ For BRETT PODOLSKY
Sherri L. Zack                         Brett Podolsky
Assistant United States Attorney       Attorney for Defendant
Southern District of Texas

_____         _____
James E. Burke IV                      David Adler
Trial Attorney                         Attorney for Defendant
Child Exploitation and Obscenity Section

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:17-CR-00066S |
| JEBEDIAH DISHMAN, | § § § § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    4/6/18
Brett Podolsky                     Date
Attorney for Defendant

_____    4/6/18
David Adler                        Date
Attorney for Defendant

19

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   4/6/18
Jebediah Dishman              Date
Defendant